IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GN PRO GROUP, LLC, an Illinois Limited Liability Company and GALINA NEDIALKOVA, its sole Member/Manager; <br><br> Plaintiffs, <br><br> v. <br><br> WELL DONE ASAP, LLC, a Pennsylvania Limited Liability Company; JOHN DOE(S), an unidentified individual(s); and JPMORGAN CHASE BANK, N.A., a national association; <br><br> Defendants. | Case No. 23-cv-16711 <br><br> Hon. Andrea R. Wood <br><br> Magistrate Judge Sunil R. Harjani |

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

Defendant JPMorgan Chase Bank, N.A. ("Chase"), through its undersigned counsel of record, hereby files its Memorandum of Law in Support of its Motion to Dismiss Plaintiff GN Pro Group, LLC's ("GN Pro") and Plaintiff Galina Nedialkova's ("Ms. Nedialkova") (GN Pro and Nedialkova collectively, "Plaintiffs") First Amended Complaint ("FAC"). (Dkt. No. 12). In support of its Memorandum, Chase states as follows:

<u>**INTRODUCTION**</u>

On April 19, 2021, Plaintiffs fell victim to a scam that deprived them of $149,850.29. Plaintiffs allege that a scammer, posing as a litigation paralegal from the law firm assisting with Plaintiffs real estate transaction, provided fraudulent wire instructions to Ms. Nedialkova and asked her to send the real estate closing funds to the scammer's account number. Ms. Nedialkova followed this request, visited a Chase branch on April 19, 2021, and personally instructed Chase (as the authorized signer for GN Pro) to wire $149,850.29 from GN Pro's Chase business checking

account into the purported scammer's account ending in -1895. Chase initiated the wire transfer after receiving Ms. Nedialkova's written wire instructions directing payment to the account ending in -1895.

Unhappy with their losses, Plaintiffs now seek to shift blame on Chase in order to recover under various inapplicable Illinois Uniform Commercial Code ("UCC") theories. But Chase is not and cannot be liable to Plaintiffs for following Ms. Nedialkova's express instructions to send funds via wire transfer to the account ending in -1895. Moreover, Plaintiffs acknowledge that they executed contractual terms acknowledging that they were on notice that Chase or any other bank involved in the wire transfer would complete GN Pro's wire transfer request using the account number or bank identification number that Ms. Nedialkova provided, even if the numbers did not match the recipient's or bank's name. Accordingly, the Court should dismiss Plaintiffs' claims against Chase with prejudice.

## BACKGROUND FACTS[1]

Ms. Nedialkova is a real estate investor that acquires properties through GN Pro—a company that Ms. Nedialkova solely owns and manages. (FAC ¶ 9). Ms. Nedialkova is also co-owner of another real estate investment and acquisition company named Viga Chicago LLC ("VIGA"). (*Id*. ¶ 10). The Complaint alleges that in April 2019[2], VIGA entered into a contract to purchase real property located in Mount Prospect, Illinois and worked with a law firm named Migdal and Associates, Ltd. ("M&A") (*Id*. at ¶¶ 11-12).

---

[1] For the purposes of this submission alone, Chase accepts as true the well-pleaded allegations of Plaintiff's FAC — as it is required to do under Federal Rule of Civil Procedure 12(b)(6). As such, the following facts are taken from the FAC, documents attached to or referenced in the Complaint, and other court records.

[2] While Plaintiffs' FAC alleges that the events at issue occurred in April 2019, the documents attached to the FAC at Exhibits B and E indicates that VIGA entered into a contract to purchase the Mount Prospect property in April 2021, and that the email communications regarding wire instructions were also sent in April 2021. Chase submits that under either timeframe dismissal of the FAC is warranted.

The FAC alleges that on April 19, 2019, a scammer—while posing as a paralegal at M&A—contacted Ms. Nedialkova, issued her a "corrected" wire instruction, and stated that VIGA should send funds to the account number identified in the "corrected" wire instruction (ending in -1895) in order to complete its purchase of the real property in Mount Prospect, Illinois. (*Id*. at ¶ 14).

After receiving the fraudster's "corrected" wire instruction, Ms. Nedialkova visited a Chase branch located in Mount Prospect, Illinois and instructed Chase to initiate a wire transfer totaling $149,850.29 from GN Pro's Chase business account to the account ending in -1895 contained in the scammer's "corrected" wire instruction. (*Id*. at ¶ 16). Ms. Nedialkova alleges that she does not recall ever receiving written notice from Chase that it could send a wire transfer on the basis of account number only, even if the accountholder did not match the name of the specified beneficiary. (*Id*. ¶ 42).

The FAC alleges that on April 21, 2019, Ms. Nedialkova learned that she had fallen victim to a scam. (*Id*. at ¶ 17). The FAC further alleges that Chase informed Ms. Nedialkova that $100,000 had already been withdrawn from the account ending in -1895. (*Id*. at ¶ 18). Plaintiffs believe that funds totaling $49,850.29 remain in the account ending in -1895. (*Id*. at ¶ 19).

Based on these allegations, Plaintiffs assert claims against Chase under Sections 4A-207 and 4A-205 of the Illinois Uniform Commercial Code, 810 ILCS 5/4A-101, *et seq*.

## **LEGAL STANDARD**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). A plaintiff's obligation

3

to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. A complaint must allege sufficient facts that would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

## ARGUMENT

### A. THE COURT SHOULD DISMISS PLAINTIFFS' ILLINOIS UCC CLAIMS AGAINST CHASE

#### 1. Plaintiffs Fail to State A Claim Under Section 4A-207 of the UCC.

Plaintiffs' first cause of action against Chase seeks to recover Plaintiffs' lost funds under Section 4A-207 of the UCC. (FAC ¶¶ 34-47). Specifically, the FAC argues that Plaintiffs are entitled to reimbursement pursuant to Section 4A-207(c)(2) because they purportedly never received notice from Chase that it could send a wire on the basis of account number only. (FAC ¶¶ 42). But, Plaintiffs' allegations are immediately disproven by the very same documentary evidence that Plaintiffs' attach as an exhibit to their Amended Complaint.

810 ILCS 5/4A-207(c)(2) makes clear that GN Pro is obliged to pay its order if Chase proves that "[GN Pro], before [Chase's] acceptance of [GN Pro's] order, [GN Pro] had notice that payment of a payment order issued by the originator might be made by the beneficiary's bank on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary." 810 ILCS 5/4A-207(c)(2). Moreover, the statute provides that "[p]roof of notice may be made by any admissible evidence. The originator's bank satisfies the burden as proof it proves that the originator, before the payment order was accepted, signed a writing stating the information to which the notice relates." *Id*.

At this stage, Plaintiffs have unquestionably conceded that proof of this notice exists. The FAC admits that Ms. Nedialkova "filled out a JPMC 'Wire Transfer Outgoing Request Form' on

4

April 19, 2021." (FAC ¶ 43). And that Form, which Ms. Nedialkova admits that she "filled out" (*id*.), provides the very proof of notice that obviates Plaintiffs' Section 4A-207 claim against Chase. (*See* Declaration of Michael Manczko ("Manczko Decl."), attached herein as Exhibit 1, at ¶ 4, Exhibit A).[3] Before Chase initiated Ms. Nedialkova's wire transfer on behalf of GN Pro, Ms. Nedialkova completed a Wire Transfer Outgoing Request Form showing Ms. Nedialkova's signature on the wire instructions and acknowledging that "[w]e or any other bank involved in the wire transfer will complete your wire transfer request using the account number or bank identification number you provide. . . [b]y providing your signature as authorization, you agree to these terms and conditions, that the wire transfer information in this document is accurate and you authorize us to process this wire transfer."). (*Id*. at pp. 2-3).

Here, the complete version of the Wire Transfer Outgoing Request Form, which Ms. Nedialkova admits she completed and executed on April 19, 2021 (FAC ¶ 43), indisputably establishes that Plaintiffs had "notice that payment of a payment order issued by [GN Pro] might be made by the beneficiary's bank on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary." 810 ILCS 5/4A-207(c)(2) Accordingly, Plaintiffs' Section 4A-207 claim must be dismissed with prejudice, as no amendment can cure Plaintiffs' deficiencies.

---

[3] While a court is normally confined to the four corners of the complaint at the Rule 12(b)(6) stage, documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the Complaint and if they are central to a plaintiff's claims. *See, e.g.*, *McCready v. EBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). Here, Plaintiffs admit that Ms. Nedialkova completed a Wire Transfer Outgoing Request Form on April 19, 2021. (FAC ¶ 43). The complete Wire Transfer Outgoing Request Form is central to Plaintiff's claims which attempt to hold Chase liable for processing a wire authorized by Plaintiffs pursuant to that form. *See also Media Bank, LLC v. SCOTTeVEST, Inc.*, 2020 WL 6825691, at *1 n. 1 (N.D. Ill. Nov. 20, 2020) ("A court may consider a document that is central to a claim … without converting a motion to dismiss into a motion for summary judgment).

5

**2. Plaintiffs Fail to State A Claim Under Section 4A-205 of the UCC.**

Plaintiffs' second claim under the UCC fails as a matter of law because they have not plausibly alleged that Chase employed any security procedures "for the detection of error"—as is required for Section 4A-205(a) to apply.

Section 4A-205(a) states, in relevant part:

> If an accepted payment order was transmitted ***pursuant to a security procedure for the detection of error*** and the payment order (i) erroneously instructed payment to a beneficiary not intended by the sender, (ii) erroneously instructed payment in an amount greater than the amount intended by the sender, or (iii) was an erroneously transmitted duplicate of a payment order previously sent by the sender … [then the rules outlined in Section 4A-205(a)(1)-(3) apply.]

810 ILCS 5/4A-205(a) (emphasis added). The FAC erroneously claims Chase employed a security procedure "for the detection of error" such that Section 4A-205(a) would apply. (FAC ¶ 5). However, none of Plaintiffs' allegations plausibly support their claim.

First, Plaintiffs are incorrect that 810 ILCS 5/4A-205 applies. Section 4A-205 only applies "[i]f an accepted payment order was transmitted pursuant to a security procedure for the detection of error." 810 ILCS 5/4A-205(a). Here, Plaintiffs cannot recover under a 4A-205 theory because the April 19, 2021 wire was admittedly initiated ***in person at a Chase bank branch***, and therefore authorized pursuant to 810 ILCS 5/4A-202(a).

810 ILCS 5/4A-202(a) and (b) provide as follows:

(a) A payment order received by the receiving bank is the authorized order of the person identified as sender ***if that person authorized the order*** or is otherwise bound by it under the law of agency.

(b) If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if

    (i)    the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and

6

>  (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer. The bank is not required to follow an instruction that violates a written agreement with the customer or notice of which is not received at a time and in a manner affording the bank a reasonable opportunity to act on it before the payment order is accepted.

810 ILCS 5/4A-202(a) and (b) (emphasis added). Subsection (a) applies to circumstances where a payment order is authorized or made in person. Subsection (b) applies to circumstances where a payment order is made electronically, thus requiring a security procedure. *See Choice Escrow and Land Title, LLC v. BancorpSouth Bank*, 754 F.3d 611, 613 (8th Cir. 2014) ("Because the customer is not physically present at the bank, the bank uses security procedures, such as passwords and electronic tokens, to verify that the person sending the payment order is actually the customer.") (discussing Mississippi's Article 4A).

> In two circumstances, [] the bank may shift the risk of a fraudulent payment order to the customer. <u>The first is the rare circumstance in which the bank can prove that the customer "authorized the order …" This circumstance is rare because ordinarily the bank has "no way of determining the identity or the authority of the person who caused the message to be sent."</u> Because of this inadequacy, Article 4A contemplates a second circumstance in which a customer will bear the risk of a fraudulent payment order. If a bank and its customer agree to implement a security procedure designed to protect themselves against fraud, the customer will bear the risk ….

*Id*. (emphasis added); *Harborview Cap. Partners, LLC v. Cross River Bank*, 600 F. Supp. 3d 485, 492 (D.N.J. 2022) ("Applying the principles of these cases, I conclude that the disputed wire transfers were undoubtedly authorized by Harborview. Like the victims in *Wellton* and *Berry*, Harborview was tricked into authorizing the transfers, but authorize them they did, as the complaint itself makes clear.").

Here, 810 ILCS 5/4A-202(a) applies because Plaintiffs themselves plead that Ms. Nedialkova "performed this transaction at the JPMC branch in Mt. Prospect, with a banker. She gave them wire instructions and specified the beneficiary was 'Independent Escrow Services Corp.' The transfer was completed using a Wire Transfer Outgoing Request Form, belonging to Chase Bank, and filled out by the Plaintiff." (FAC ¶ 16). Accordingly, Plaintiff cannot recover on a theory of "security procedures" being violated pursuant to Section 4A-205 where Plaintiffs' transaction was authorized by Ms. Nedialkova in person pursuant to Section 4A-202(a).

Section 4A-202(b) contemplates an electronic request from a customer submitted to the receiving bank and provides that the receiving bank must take "commercially reasonable" steps in order to ensure that the wire transfer request is one actually originated by the true customer. 810 ILCS 5/4A-203, cmt. 1 ("In a very large percentage of cases covered by Article 4A, transmission of the payment order is made electronically. The receiving bank may be required to act on the basis of a message that appears on a computer screen. . . There is no way of determining the <u>identity or the authority of the person</u> who caused the message to be sent.") (emphasis added). The security procedures mandated by Article 4A are intended to prevent unauthorized payment orders from being <u>initiated or altered electronically</u> by those without authority. It is not directed toward an authorized payment order received ***directly and personally*** from the customer, as in the instant case. *See Choice Escrow*, 754 F.3d at 613.

As Plaintiffs fully admit, Plaintiffs received fraudulent wire instructions via email on April 19, 2021 and then initiated an in person wire transfer at a Chase branch that very same day based on those fraudulent instructions. (FAC ¶¶ 14, 16). This is precisely the scenario where a "bank may shift the risk of a fraudulent payment order to the customer." *Choice Escrow*, 754 F.3d at 613. Commercially reasonable verification methods to test the authenticity of the request are irrelevant

8

and inapplicable to the facts at hand. Plaintiffs' claim against Chase for violation of 810 ILCS 5/4A-205 fails as a matter of law, and Plaintiffs' FAC should consequently be dismissed with prejudice as no amendment can cure.

Second, even if the Court disregards Chase's above arguments based on Plaintiffs' in-person initiation of the wire transfer, Plaintiffs' claim still fails because the FAC does not plausibly allege that a security procedure for the ***detection of error*** existed between Chase and Plaintiffs. Advancing a claim under Section 4A-205 requires, among other things, that the Plaintiff establish that an "accepted payment order was transmitted pursuant to a security procedure for the detection of error… [.]" 810 ILCS 5/4A-205(a); *see also id*. at cmt. 1 ("Since 'security procedure' is defined by Section 4A-201 as 'a procedure established by agreement of a customer and a receiving bank for the purpose of * * * detecting error * * *,' ***Section 4A-205 does not apply if the receiving bank and the customer did not agree to the establishment of a procedure for detecting error.***") (emphasis added).

Here, the FAC does not allege that Chase and Plaintiffs agreed to any such procedure, nor could it be based on Plaintiffs own admissions. (*See generally*, FAC). Specifically, the Wire Transfer Outgoing Request Form that Ms. Nedialkova admittedly completed contained terms that expressly disclaimed the existence of security procedures for the detection of error. (Ex. 1, Manczko Decl. at Ex. A, p. 2) ("These security procedures are only to help prevent unauthorized access to your account."). In other words, Chase's security procedure—the Wire Transfer Outgoing Request Form—was designed to authenticate the identity of the person providing the wire instructions. The Wire Transfer Outgoing Request Form is not a security procedure that detects errors in the accountholder's instructions to the bank. Accordingly, as other jurisdictions have concluded on similarly pled allegations, dismissal is proper on this basis alone. *Arubawater*

9

*Corp. v. Wells Fargo Bank, N.A.*, 2023 U.S. Dist. LEXIS 232275, at *20 (D. Ariz. Nov. 20, 2023) (finding no security procedure established for "detecting error" where operative agreement limited security procedures to only verifying the authenticity of an instruction); *Sherlock Investments-Duvall LLC v. Intercoastal Auto Brokers & Logistics, LLC*, No. 2:20-cv-00129-RAJ-BAT, 2020 U.S. Dist. LEXIS 149014, *15 (W.D. Wash. April 7, 2020) (Magistrate Report & Recommendation) ("Sherlock makes no allegation that it and [Bank of America] ever agreed to any specific security procedure, and therefore, Section 4A-205 does not apply."). Dismissal with prejudice is warranted on this basis alone because no amendment can cure.

## CONCLUSION

For the foregoing reasons, Defendant JPMorgan Chase Bank, N.A. respectfully requests that this Court grant its motion and dismiss Plaintiffs' claims against Chase in the First Amended Complaint in their entirety, with prejudice.

Dated: April 10, 2024

Respectfully submitted,

 */s/ Christopher A. Mair*
Paul J. Ferak
Christopher A. Mair
Blake Altman
**GREENBERG TRAURIG, LLP**
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
Fax: (312) 456-8435
Email: ferakp@gtlaw.com
Email: mairc@gtlaw.com
Email: blake.altman@gtlaw.com

*Attorneys for JPMorgan Chase Bank, N.A.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on April 10, 2024, I caused the foregoing **DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered parties.

<em>/s/ Christopher A. Mair</em>